UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA                                    :   MEMORANDUM
                                                            :   <u>OPINION AND ORDER</u>
        - against -                                         :
                                                            :   S3 05 CR 960 (SAS)
JOEL SPIGELMAN,                                             :
                                                            :
                        Defendant.                          :
------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    BACKGROUND

On July 20, 2007, a four-count Superseding Indictment, S3 05 CR 960 (SAS), was filed charging Joel Spigelman with: (1) intentional murder in connection with a narcotics conspiracy; (2) felony murder in aid of racketeering; (3) murder committed with a firearm; and (4) participation in a narcotics conspiracy between 1992 and 2002. Spigelman's trial began on July 9, 2007, and ended on July 19, 2007, when the jury convicted him of all four counts. After the jury announced its guilty verdict, Spigelman's trial attorney, Frederick Cohn, asked for a thirty-day extension of time in which to file post-trial motions. I agreed and set August 17, 2007, as the deadline for filing post-trial motions.

On August 21, 2007, Chambers received a *pro se* submission from Spigelman entitled "Addendum - Back-Up Per Trial Transcript for Motion for

Judgment of Acquittal Notwithstanding the Verdict or in the Alternative for New Trial Based on Newly Discovered Evidence."[1] In his Addendum, Spigelman cites numerous instances where Cohn allegedly provided ineffective assistance of counsel. At a conference held on September 10, 2007, I relieved Cohn as counsel and appointed Marvin E. Schechter as counsel under the Criminal Justice Act. At that conference, I directed Schechter to make his pre-sentencing submission by December 3, 2007, and ordered the Government to reply by December 12, 2007.[2]

In advance of sentencing, Schechter sent a letter-brief to this Court dated December 3, 2007 ("Def. Mem."). In his letter-brief, Schechter incorporates the points previously made by Spigelman in his Addendum. Schechter also asks this Court to treat the Addendum as a motion for a new trial under Federal Rule of Criminal Procedure 33 ("Rule 33") based upon the ineffective assistance of Spigelman's former trial counsel.[3] The Government has responded to Schechter's

---

[1] Attached as Exhibit A to the 12/3/07 Letter from Marvin E. Schechter, defendant's current attorney, to this Court (hereinafter referred to as the "Addendum").

[2] These dates were based on a sentencing date of December 19, 2007. Since that conference, Spigelman's sentencing has been re-scheduled for January 22, 2008. The parties have nonetheless adhered to the dates previously set.

[3] Schechter raises fifty-four points previously raised by Spigelman, four of which have been withdrawn. *See* Def. Mem. at 3-16.

2

submission with a letter-brief dated December 12, 2007 ("Govt. Opp.").[4] For the following reasons, Schechter's request to treat the Addendum as a Rule 33 motion for a new trial is granted but the Rule 33 motion is denied on the merits.[5]

## II. LEGAL STANDARD

Rule 33 authorizes a district court to grant a new trial "if the interest of justice so requires."[6] In assessing a motion for a new trial under Rule 33, a

---

[4] The Government has addressed, in a painstakingly detailed chart, all of the remaining fifty substantive points raised by the defendant. *See* Govt. Opp. at 5-35 ("Government Chart"). This Court has reviewed the Government's analysis of each point and is in full agreement with each and every one. Accordingly, the substance of the points, and the Government's response thereto, will not be recounted in this Opinion and Order. For detailed summaries, *see* Def. Mem. at 3-16 and Govt. Opp. at 5-35.

[5] In its opposition, the Government argues that Spigelman's Rule 33 motion should be dismissed as untimely because it was received in Chambers on August 21, 2007, four days after the August 17, 2007 deadline. *See* Govt. Opp. at 2-3. Schechter argues that Spigelman's *pro se* motion was timely under the so-called "prison mailbox rule" established by the Supreme Court in *Houston v. Lack*, 487 U.S. 266, 270 (1988). *See* Def. Mem. at 17. Schechter points out that the United States Postal Service stamp on the envelope sent by Spigelman appears to contain the letters "AUG" at the top of the circular stamp and the number "20" at the bottom of the stamp. *See id.* at 3 & Ex. B. Given a postmark of August 20, 2007, one could reasonably conclude that Spigelman gave his motion to prison officials on August 17, 2007, which was a Friday, and those officials waited until the following Monday, August 20, 2007, to mail it to this Court. Under this conceivable scenario, Spigelman's motion is timely. Moreover, in the interest of justice, this Court would rather address the merits of Spigelman's motion than dismiss it on timeliness grounds.

[6] Fed. R. Crim. P. 33(a).

district court must exercise great caution and may exercise such authority only in the most extraordinary circumstances."[7] Motions for a new trial are generally disfavored.[8] Moreover, the Second Circuit has held that, in order to grant a new trial under Rule 33, it must be "'a manifest injustice to let the guilty verdict stand.'"[9] In exercising the broad discretion conferred under Rule 33, a court may weigh the evidence and assess the credibility of witnesses.[10] However, in the absence of exceptional circumstances, trial courts "must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses."[11]

The Supreme Court has set forth a two-prong test for ineffective assistance of counsel claims that requires a defendant to show: (1) that his counsel's performance was deficient; and (2) prejudice.[12] To establish deficient performance, a defendant must show that "counsel's representation fell below an

---

[7] *See United States v. Spencer*, 4 F.3d 115, 118 (2d Cir. 1993); *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993).

[8] *See United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995).

[9] *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (quoting *United States v. Reed*, 875 F.2d 107, 114 (7th Cir. 1989)).

[10] *See Sanchez*, 969 F.2d at 1413.

[11] *Id.* at 1414 (quotation marks and citation omitted).

[12] *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See also Bunkley v. Meachum*, 68 F.3d 1518, 1521 (2d Cir. 1995).

4

objective standard of reasonableness" under prevailing professional norms.[13] To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[14]

Courts must be "highly deferential" to an attorney's performance, as there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," particularly with respect to strategic choices made by counsel.[15] Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[16] Mere disagreement with an attorney's strategy is not enough for a defendant to prevail on an ineffective assistance claim.[17] Instead, a defendant

---

[13] *Strickland*, 466 U.S. at 688.

[14] *Id.* at 694.

[15] *Id.* at 689, 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

[16] *Id.* at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)).

[17] *See United States v. Sanchez,* 790 F.2d 245, 253 (2d Cir. 1986) ("A defendant, of course, may not claim ineffective assistance of counsel merely

5

must satisfy an objective review where counsel's performance is "measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'"[18]

Cross-examination is generally entrusted to the judgment of trial counsel.[19] "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. . . . Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature."[20] Thus, "the tactical decision of whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation."[21] However, "the decision not to call a witness must be grounded in some strategy that advances the client's interests" rather than an

---

because in hindsight he thinks counsel's trial strategy was inadequate.").

[18] *Wiggins* v. *Smith*, 539 U.S. 510, 523 (2003) (quoting *Strickland*, 466 U.S. at 688, 689)).

[19] See *Eze* v. *Senkowski*, 321 F.3d 110, 127 (2d Cir. 2003).

[20] *United States* v. *Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987).

[21] *United States* v. *Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997).

attempt by the attorney to avoid doing some work.[22]

## III. DISCUSSION

Spigelman's Rule 33 motion must be rejected because he has failed to meet both prongs of the *Strickland* standard. Having examined each of Spigelman's allegations in his Rule 33 motion and the trial record as a whole, it is clear that Cohn's conduct fell well within the range of reasonable professional standards. Almost all of the allegations concern the questioning of witnesses on largely peripheral matters, an area generally left to trial counsel's discretion. Furthermore, the majority of the lines of questioning proposed by Spigelman: (1) concern topics that are irrelevant to the issue of guilt; (2) are based on incorrect assumptions; and/or (3) were already presented to the jurors for their consideration. Finally, in light of the overwhelming evidence against him, Spigelman cannot demonstrate that he suffered prejudice, *i.e,* that the results of the trial would have been different had the questions he requested in fact been asked.

Spigelman does not point to any extraordinary circumstances which compel this Court to grant him a new trial. Instead, he provides a litany of alleged errors committed by his trial counsel which can be grouped as follows: (1) areas where his trial counsel should have conducted further cross-examination of the

---

[22] *Eze,* 321 F.3d at 129.

7

Government's witnesses; and (2) deficiencies in the direct examination of Spigelman where his trial counsel failed to elicit certain facts not previously raised before the jury.[23] Upon close examination, however, most of Spigelman's claims are factually inaccurate; his allegations do not constitute actual inconsistencies; and many of his claims were in fact presented to, and rejected by, the jury. Because Spigelman cannot show that he received ineffective assistance of counsel, his Rule 33 motion must be denied.

With regard to the questioning of witnesses, Spigelman cannot establish constitutionally ineffective assistance merely because he believes that counsel should have focused on minor topics or inconsistencies, none of which would have made a difference in the outcome of the trial. Importantly, Spigelman's complaints concern minor, peripheral matters which had no effect on his overall trial strategy. At trial, Spigelman pursued a strategy in which he contended that another person, Luis Chiluiza, was responsible for certain crimes charged in the Indictment and he otherwise denied responsibility for committing the murder of the unidentified female drug courier. In exercising his right to

---

[23] While Spigelman does not allege that any of the Government's witnesses actually perjured themselves at his trial, he attempts to marshal alleged inconsistencies from different pieces of testimony in order to show weaknesses in the Government's case and therefore demonstrate that his counsel's performance was constitutionally deficient.

8

testify, Spigelman denied the truth of his detailed oral and written post-arrest confessions. In so doing, Spigelman stated that he merely repeated a story to police officials that he had heard from a co-conspirator several years earlier. Given Spigelman's strategy, it is apparent that his trial attorney attempted to corroborate his story through his direct examination of Spigelman and his cross-examination of the Government's witnesses. An ineffective assistance of counsel claim cannot succeed based solely on the complaint that counsel, a skilled and experienced lawyer, failed to question witnesses on certain topics or inconsistencies.

With respect to witness credibility, most of Spigelman's inconsistencies have no factual basis in the trial record, as explicitly shown in the Government's chart. In the few instances in which there is any degree of disparity, it is inconsequential given the overwhelming consistency of the testimony and evidence. Spigelman has not shown any significance from his trial attorney's failure to highlight such minor inconsistencies. Nor has Spigelman shown, or even alleged, that the Government's witnesses were so biased or so inconsistent as to constitute an "extraordinary circumstance" which would warrant a new trial. Thus, the handful of instances of alleged differences in testimony which Spigelman claims his attorney failed to exploit do not support his conclusion that

9

he received constitutionally inadequate representation. In addition, with respect to the additional evidence that Spigelman claims was not presented through his direct examination, most of the topics he raises were in fact explored at trial. As explained by the Government, even if some of the contested evidence was not presented in the precise manner now suggested by Spigelman, the evidence concerns relatively inconsequential points that are better left to defense counsel's discretion.[24] Furthermore, Spigelman's allegations regarding missing evidence are factually incorrect and, as a result, do not support an ineffective assistance of counsel claim.[25]

---

[24] For example, Spigelman complains that a photograph purportedly taken on the day of his arrest did not depict his appearance that day and that he did not have sufficient opportunity to explain his clothes and facial hair as seen in the arrest photo introduced at trial. *See* Government Chart Points 28 and 39. However, these issues were raised during: counsel's voir dire of the photograph, *see* Trial Transcript at 530; the cross-examination of Special Agent McCaffrey, *see id.* at 633; Spigelman's direct and re-direct examinations, *see id.* at 765-66, 918-19; and Cohn's summation, *see id.* at 977-78. For other instances where contested evidence was, in fact, already put before the jury, *see* Points 16, 24, 38, 43, 45, 46, and 50.

[25] For example, Spigelman claims that his trial attorney was ineffective in failing to ask him to explain who was with him at the meeting at the Panamerican Hotel. *See* Point 12. However, Spigelman was given the opportunity to discuss this meeting on cross-examination. Accordingly, there was nothing left for Cohn to ask Spigelman on direct examination with regard to this meeting. For other factually incorrect allegations of missing evidence, *see, e.g.,* Points 14 and 29.

Finally, Spigelman does not argue that his laundry list of complaints concerning his attorney's conduct could have affected the outcome of his trial. The evidence at trial overwhelmingly established Spigelman's guilt and included: Spigelman's written and oral post-arrest confessions, the testimony of four co-conspirators (one of whom spoke directly with Spigelman concerning the murder plot), and physical evidence of the murder. Accordingly, Spigelman's criticisms of his trial attorney's strategy are without legal effect. Significantly, Spigelman does not explain how his proposed additional lines of cross-examination would have altered the jury's verdict or what affect any additional evidence resulting from his proposed direct examination would have had on the outcome of the trial. Examining the trial record as a whole, it is clear that none of the alleged failures of trial counsel, either considered individually or collectively, were such that there is "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[26] Indeed, it is quite clear that the errors alleged in this case, even if they had any merit, had no effect on the outcome of the trial. Spigelman has therefore failed to satisfy *Strickland's* prejudice prong.

In sum, Spigelman points to no extraordinary circumstances in this case that would warrant a new trial. Nor does he show that he received

---

[26] *Strickland*, 466 U.S. at 694.

constitutionally ineffective assistance of counsel or that but for trial counsel's alleged errors, the results of his trial would have been different. For these reasons, his motion for a new trial must be denied. The Clerk of the Court is directed to close this motion [Document # 62]. Sentencing will proceed on January 22, 2008, at 2:30 p.m. in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
January 8, 2008

## - Appearances -

**For Defendant:**

Marvin E. Schechter, Esq.
152 West 57th Street, 24th Floor
New York, New York 10019
(212) 307-1405

**For the Government:**

Helen Cantwell/Marissa Mole
Assistant United States Attorneys
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2193/2275